IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0882
════════════
 
Perry 
Homes, A Joint 
Venture, Home Owners Multiple Equity, Inc.,
and Warranty Underwriters 
Insurance Company, Petitioners,
 
v.
 
Robert E. Cull and S. Jane 
Cull, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued March 20, 
2007
 
 
            
Justice Johnson, joined by 
Chief Justice Jefferson and Justice Green, concurring in part and 
dissenting in part.
 
            
I disagree that the trial court abused its discretion in compelling 
arbitration. I concur with the disposition of part VI-C. I dissent from parts 
VI-A and VI-B of the Court’s opinion and dissent from its judgment.
            
The parties agree that their arbitration agreement covers the dispute and 
that the Federal Arbitration Act (FAA) applies. Thus, whether the Culls waived 
the right to arbitrate is a question of law. In re Oakwood 
Mobile Homes, Inc., 987 S.W.2d 571, 574 (Tex. 1999); In re Bruce Terminix Co., 988 S.W.2d 702, 703-04 (Tex. 1998). The 
Court has said previously, and says again today, that prejudice is a required 
element of waiver of the right to arbitrate cases subject to the FAA. ___ S.W.3d 
at ___; see In re Bank One, N.A., 216 S.W.3d 825, 827 (Tex. 2007). The party 
asserting waiver has the burden to prove prejudice. See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753-54 (Tex. 2001) 
(noting that if an agreement to arbitrate exists and the party opposing 
arbitration fails to prove its defenses, then a trial court has no discretion 
and its only option is to compel arbitration); In re Bruce Terminix Co., 988 S.W.2d at 704 (“Even substantially 
invoking the judicial process does not waive a party’s 
arbitration rights unless the opposing party proves that it suffered prejudice 
as a result.”). In the context of the issue before us, prejudice means 
detriment. See In re Bank One, 216 S.W.3d at 827 (“A 
party waives an arbitration clause when it substantially invokes the judicial 
process to the other party’s detriment.”). We review a trial court’s 
order compelling arbitration for an abuse of discretion. See In re Bruce 
Terminix Co., 988 S.W.2d at 
705. That standard is in accord with the general practice of reviewing a 
trial court’s actions for an abuse of discretion when a trial court has 
discretion to grant or deny relief based on its factual determinations. See 
Bocquet v. Herring, 972 S.W.2d 19, 20-21 (Tex. 
1998) (noting that the abuse of discretion standard of review as to a trial 
court’s factual determinations applies when a trial court has discretion either 
to grant or deny relief based on its factual determinations). The test for abuse 
of discretion is not whether, in the opinion of the reviewing court, the trial 
court’s ruling was proper, but whether the trial court acted without reference 
to guiding rules and principles. See Cire v. 
Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004). The trial 
court’s ruling should be reversed only if it was arbitrary or unreasonable. 
Id. at 
839. Generally, if there is any evidence to support the trial court’s 
ruling then the court did not abuse its discretion. See In re BP 
Prods. N. Am., Inc., ___ S.W.3d ___, ___ (Tex. 2008) (citing Butnaru v. 
Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002)). That is because it is only when 
the evidence is such that the trial court could have made but one decision, yet 
made another, that we say the trial court abused its discretion. Id. Our decisions 
affording deference to trial court rulings when evidence supports those rulings 
comport with the standard of review utilized by the United States Fifth Circuit 
Court of Appeals in regard to whether a party has suffered prejudice for 
purposes of waiving arbitration rights subject to the FAA. The Fifth Circuit’s 
position is that trial court findings on which the legal conclusion of waiver is 
based are predicate questions of fact “which may not be overturned unless 
clearly erroneous.” Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 
1159 (5th Cir. 1986); see also Republic Ins. Co. v. Paico Receivables, LLC, 383 F.3d 341, 347 (5th Cir. 
2004) (“[T]he district court’s finding that PRLLC would suffer prejudice if 
arbitration was compelled is not clearly erroneous.”).
            
The waiver issue in this matter is not determined by general waiver 
elements, but by waiver as that term is used in regard to avoiding arbitration 
agreements subject to the FAA. Generally, “waiver” is the intentional 
relinquishment of a right actually or constructively known, or intentional conduct inconsistent with claiming that 
right. See Jernigan v. Langley, 
111 S.W.3d 153, 156 (Tex. 2003). The elements of waiver include (1) 
an existing right, benefit, or advantage held by a party; (2) the party’s actual 
or constructive knowledge of its existence; and (3) the party’s actual intent to 
relinquish the right or intentional conduct inconsistent with the right. See 
Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 643 
(Tex. 
1996). The Culls’ actions and their 
attorneys’ statements in court, taken as a whole, present compelling evidence of 
those elements.
            
Waiver as that term is used in regard to arbitration agreements subject 
to the FAA, however, requires more than is required for general waiver—it 
requires proof that the party asserting waiver as a defense to arbitration has 
suffered detriment. ___ S.W.3d at ___; In re Bank One, 
216 S.W.3d at 827. So, when the Culls finally moved to compel arbitration 
and proved applicability of an arbitration agreement, Defendants unquestionably 
had the burden to raise and prove their defense of waiver, including prejudice, 
if they wanted to avoid arbitration. In re Bruce Terminix Co., 988 S.W.2d at 704.
            
Defendants recognized that to avoid arbitration they had to prove a 
defense to the arbitration agreement. As part of their response to the Culls’ 
motion to compel arbitration, Defendants pled that (1) after suit was filed, all 
parties conducted written and oral discovery, (2) the Culls filed several 
motions and obtained two hearings and court rulings on discovery-related issues, 
and (3) a trial setting was imminent. Defendants conceded applicability of the 
arbitration clause, then cited authorities for and took the position that 
“Plaintiffs have waived arbitration because they substantially invoked the 
judicial process to the detriment of Defendants.” Subsequently, Defendants more 
clearly detailed the detriment they were claiming:
 
            
In this case, the costs incurred by Defendants in responding to the 
motions to compel filed by Plaintiffs would not have been incurred during 
the course of arbitration. Similarly, defendants are prejudiced by the fact that 
it [sic] was required to comply with the Court’s orders on such motions to 
compel, when such means and methods would not have been available in 
arbitration. Because of Plaintiffs’ delay in seeking arbitration, coupled 
with the resulting prejudice by Defendants being required to respond to 
multiple discovery motions and comply with orders thereon, Plaintiffs cannot 
now rely on the Limited Warranty Agreement to compel arbitration.
 
(Emphasis 
added). A second part of Defendants’ response was a motion for continuance of 
trial to complete discovery.
            
At the hearing on the Culls’ motion to compel arbitration, the trial 
judge, who noted at the end of the hearing that “I just finished [an 
arbitration] with the American Arbitration Association,” admitted all the 
evidence offered, and took judicial notice of the court file as requested by 
Defendants. After evidence was introduced at the hearing, Defendants again 
argued that there were two factors involved: “whether or not the parties have 
acted inconsistently with the agreement to arbitrate and then whether those 
actions and the actions that were taken actually worked to the detriment or 
prejudice of the party that’s opposing transference to arbitration.”
            
During the hearing, the trial judge expressed considerable concern over 
the Culls’ conduct. He discussed the Culls’ testimony that they had knowledge of 
the arbitration clause before suit was filed, the extended time for which the 
case had been filed, and the impending trial setting. He also discussed the 
arbitration provision itself,[1] its mandatory nature, and pressed the 
Culls’ attorney about the reason for the delay in requesting arbitration. 
Finally, he asked about a provision in the arbitration provision that provided 
“if any party commences litigation in violation of this Agreement, such party 
shall reimburse the other parties to the litigation for their costs and expenses 
including attorney’s fees incurred in seeking dismissal of such litigation.” The 
Culls’ attorney acknowledged the provision and asserted that it would be up to 
the arbitrator to determine whether the Culls would be responsible for such fees 
and costs of Defendants. Defendants did not dispute the Culls’ position. Then, 
agreeing with the assertions of the parties, the trial judge did not address 
whether the judicial process had been substantially invoked; rather, the court 
concluded Defendants had not shown the prejudice they claimed and granted the 
Culls’ motion:
 
The 
question is, I think, when it deals with waiver is are the defendants 
prejudiced by this delay, and if they are not prejudiced or if there is not 
proof of prejudice, then the Court has no alternative but to order the case 
abated for arbitration purposes.
            
And, [counsel for Defendants], all I have heard from you insofar 
as what is the prejudice suffered by people you represent is that they have 
participated in litigation activities that may or may not have been required by 
the arbitrator. So without anything further, I’m going to grant the motion 
to abate the case for arbitration.[2]
 
(Emphasis 
added).
            
Perry 
Homes filed a motion for 
reconsideration. In their motion, Perry Homes again asserted that “all parties 
have conducted written and oral discovery under the Texas Rules of Civil 
Procedure” but did not complain that they had been denied any discovery. 
Perry 
Homes’ motion recapped the 
prejudice they were claiming:
 
Defendants 
have in fact been prejudiced by Plaintiffs’ last-minute attempt to disclaim 
their election to file suit and instead choose arbitration. In this case, the 
costs incurred by Defendants—including attorneys’ fees and man hours—in 
attending 16 depositions, responding to multiple sets of written discovery and 
responding to the motions to compel filed by Plaintiffs would not have been 
incurred during the course of arbitration. Similarly, Defendants are 
prejudiced by the fact that they were required to comply with the Court’s orders 
on such motions to compel, when such means and methods would not have been 
available in arbitration. The amount of attorney time Perry Homes has invested in responding to 
Plaintiffs’ discovery requests and related motions thus far 
is 122 attorney hours and 20 paralegal hours.
 
(Emphasis 
added). An affidavit was attached setting out that the law firm representing 
Perry Homes had spent 122 attorney hours and 20 paralegal hours in responding to 
the Culls’ discovery requests and related motions.[3] The hours were not broken down and no 
dates, times, or tasks were set out. There was no specification as to time spent 
on actions Defendants claimed as prejudice—responding to motions to compel 
discovery and complying with court orders compelling discovery that would not 
have been available in arbitration. The docket sheet reflects that the trial 
court denied the motion, but the record contains neither a transcript from the 
hearing nor an order ruling on the motion.
            
The Court agrees that the standard of review applicable to the trial 
court’s order compelling arbitration is abuse of discretion, but its holding 
that the Culls waived their right to arbitrate misses the mark. In reaching its 
conclusion, the Court says the question of prejudice is a matter of law because 
all the relevant facts were undisputed. It seems to me that (1) there was 
evidence requiring the trial court to make evidentiary determinations as to 
prejudice, and (2) Defendants did not prove that they were prejudiced or that 
the Culls obtained an advantage because of the litigation process.
            
As to the evidence that the trial court was required to weigh and make 
evidentiary determinations on, the record reveals that Defendants took 
depositions and engaged in written discovery, as did the Culls. Yet Defendants 
did not claim prejudice due to the Culls somehow reaping an unfair advantage 
through discovery. The trial court could have considered the advantages accruing 
to all parties by depositions and bilateral written discovery and determined 
that no prejudice was shown because all parties were more fully prepared to 
proceed with dispute resolution by knowing what the testimony of witnesses would 
be, and that such knowledge would shorten arbitration and reduce further 
costs.
            
Next, at the time of the hearing on the motion to compel there was an 
imminent trial setting. But Defendants did not claim they had spent time 
preparing to go to trial at the December 10 setting and that those hours would 
be wasted unless they went to trial immediately. At the December 6 hearing on 
the motion to compel, the parties agreed the case would not be ready for trial 
at the December 10 setting, and the Culls’ attorney stated that, according to 
the court clerk, the case probably would not be reached for trial. In any event, 
a trial setting and actually going to trial are different matters. Even though 
Defendants moved for a continuance and requested the case to be reset in two 
months, there is nothing in the record to show when the next setting actually 
would have been, much less when the case would have gone to trial if the motion 
for continuance had been granted. The Court speculates that trial would have 
occurred sooner than arbitration took place. To the extent a resetting or actual 
future trial date should be considered, however, the trial court was in the best 
position to determine when any new setting would have occurred—whether days, 
weeks, or months in the future—and to determine the weight to give the setting 
and a potential trial date along with the other factors.
            
Further, the Court discounts evidence of a contractual provision in the 
arbitration clause requiring any party that commenced litigation in violation of 
the arbitration clause to reimburse other parties’ litigation expenses and 
costs. The clause is not a model of clarity as to exactly what was 
recoverable:
 
Inasmuch 
as this Agreement provides for mandatory arbitration of disputes, if any party 
commences litigation in violation of this Agreement, such party shall reimburse 
the other parties to the litigation for their costs and expenses including 
attorney’s fees incurred in seeking dismissal of such litigation.
 
            
It was the trial court’s goal, just as it is ours, to ascertain the true 
intent of the parties to the agreement. See J.M. Davidson, 
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). The language used in the 
agreement is the primary evidence of that intent. See id.; National 
Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 
520 (Tex. 1995). If the contract is subject to two or more reasonable 
interpretations after applying the pertinent rules of construction, the contract 
is ambiguous, creating a fact issue on the parties’ intent. See J.M. 
Davidson, 128 S.W.3d at 229.
            
The Court construes the clause as allowing reimbursement for expenses and 
attorneys’ fees incurred in seeking dismissal of the lawsuit, but not for 
expenses and fees in preparing the suit for trial. However, the clause can also 
be read as requiring reimbursement of all litigation costs and expenses, 
including but not limited to attorneys’ fees incurred in seeking dismissal of 
the litigation. And that, apparently, is how the parties interpreted the 
agreement. The trial court questioned the Culls’ attorney about whether the 
Culls would be responsible for the Defendants’ attorneys’ fees and costs. When 
the Culls’ attorney replied that it was an issue for the arbitrator, the 
Defendants’ attorney did not contend otherwise. See Mathis v. Lockwood, 
166 S.W.3d 743, 744-45 (Tex. 2005); Banda v. 
Garcia, 955 S.W.2d 270 (Tex. 1997). The Culls’ attorney’s 
representations and lack of protestation by Defendants’ attorney is the only 
evidence in the hearing record about the parties’ intent as to the language in 
the clause.[4] Under the abuse of discretion standard by 
which we review the trial court’s order, the reimbursement clause and the 
attorneys’ respective representations and silence is part of the entire record 
which we must consider in determining whether the trial court followed guiding 
rules and principles. See Chrysler Corp. v. Blackmon, 
841 S.W.2d 844, 852 (Tex. 1992); Walker v. Packer, 827 S.W.2d 833, 839-40 
(Tex. 
1992).
            
But even if the Court is right and the reimbursement clause does not 
allow for recovery of all Defendants’ litigation attorney’s fees, an arbitration 
award would not be subject to being vacated if an arbitrator interpreted the 
clause to allow recovery of all the fees. If arbitrators simply misinterpret a 
contractual clause such as the reimbursement clause, that type of error is not 
one which will justify setting aside an award.[5] See Wise v. Wachovia Securities, 
LLC, 450 F.3d 265, 269 (7th Cir. 2006) (noting that in reviewing an 
arbitration award under the FAA, “the issue for the court is not whether the 
contract interpretation is incorrect or even wacky but whether the arbitrators 
had failed to interpret the contract at all”). Under the circumstances, it was 
proper for the trial court to weigh, and the record shows it did, the 
reimbursement provision and the parties’ representations in deciding that 
Defendants had not proved they suffered prejudice. Regardless of the trial 
court’s interpretation of what costs and expenses would be recoverable under the 
reimbursement provision, the mere existence of the provision and its 
reimbursement requirement comprise evidence supporting the decision to order 
arbitration and properly leave construction and application of the clause to the 
arbitrator.
            
In sum, there were decisions for the trial court to make based upon 
weighing evidence, drawing inferences from it in light of the parties’ 
contentions, determining what the evidence and inferences proved, and drawing a 
conclusion as to Defendants’ claims of prejudice. That situation requires our 
deferring to the trial court’s findings and order when the standard of review is 
abuse of discretion.
            
Despite evidentiary matters the trial court had before it which warrant our deferring to its implied and stated findings, the 
Court sets out factors that were uncontroverted, then 
concludes, without ever saying exactly how, that Plaintiffs were advantaged or 
Defendants were prejudiced by the “inherent unfairness” of it all:
 
            
Here, the record before the trial court showed that the Culls objected to 
arbitration initially, and then insisted on it after the Defendants acquiesced 
in litigation. They got extensive discovery under one set of rules and then 
sought to arbitrate the case under another. They delayed disposition by 
switching to arbitration when trial was imminent and arbitration was not. They 
got the court to order discovery for them and then limited their opponents’ 
rights to appellate review. Such manipulation of litigation for one party’s 
advantage and another’s detriment is precisely the kind of inherent unfairness 
that constitutes prejudice under federal and state law.
 
___ S.W.3d at ___. No one (but the Culls and their attorneys) 
could seriously disagree that the Culls’ conduct smacks of inequity. But even 
disregarding the evidentiary questions the trial court had to resolve as set out 
above, when the record is searched for evidence that Defendants suffered 
prejudice as Defendants claimed—by incurring expenses in discovery 
proceedings, responding to discovery motions, and complying with court orders on 
discovery when that type of activity would not be available in arbitration—there 
is none. Nor is there evidence that the Culls were unfairly advantaged. The fact 
of the matter is that all parties took part in litigation discovery as part of 
the process to resolve their dispute. The Court discusses at length how the 
facts are undisputed, how ordering the parties to arbitration resulted in 
“inherent unfairness” to Defendants, and that such “inherent unfairness” equates 
to prejudice to Defendants, or conversely, unfair advantage to the Culls. 
However, the authorities used to support the Court’s statements do not cut 
nearly so broadly as the Court indicates. The cases 
cited incorporate elements such as delay, expense, damage to a party’s legal 
position, or “tactical advantage” by which to measure 
prejudice to one party or unfairness to the other party. ___ S.W.3d at ___ n.94 
(citing In re Tyco Int’l Ltd. Sec. Litig., 422 
F.3d 41, 47 n.5 (1st Cir. 2005) (“[A] party should not be allowed purposefully 
and unjustifiably to manipulate the exercise of its arbitral rights simply to 
gain an unfair tactical advantage over the opposing party.” (emphasis 
added)); Doctor’s Assocs. v. Distajo, 107 F.3d 
126, 134 (2d Cir. 1997) (“[P]rejudice as defined by 
our cases refers to the inherent unfairness—in terms of delay, expense, or 
damage to a party’s legal position—that occurs when the party’s opponent 
forces it to litigate an issue and later seeks to arbitrate that same issue.” 
(emphasis added)).
            
The following passage embodies the substance of the Court’s opinion as to 
prejudice or unfair advantage:
 
It is also 
unquestionably true that [the Cull’s] conduct prejudiced the Defendants. 
“Prejudice” has many meanings, but in the context of waiver under the FAA it 
relates to inherent unfairness—that is, a party’s attempt to have it both ways 
by switching between litigation and arbitration to its own advantage:
[F]or 
purposes of a waiver of an arbitration agreement[,] prejudice refers to the 
inherent unfairness in terms of delay, expense, or damage to a party’s legal 
position that occurs when the party’s opponent forces it to litigate an issue 
and later seeks to arbitrate that same issue.
Thus, “a 
party should not be allowed purposefully and unjustifiably to manipulate the 
exercise of its arbitral rights simply to gain an unfair tactical advantage over 
the opposing party.”
. . . Such 
manipulation of litigation for one party’s advantage and another’s detriment is 
precisely the kind of inherent unfairness that constitutes prejudice under 
federal and state law.
 
___ S.W.3d at 
___ (citations omitted). As noted previously, the Court does not specify how 
Defendants proved, at the hearing on the Culls’ motion to compel arbitration, 
detriment from delay, damage to Defendants’ legal position or a tactical 
advantage achieved by the Culls, which perhaps is just as well because 
Defendants did not claim those types of prejudice in the trial court. Defendants 
claimed prejudice because of discovery and court hearings that would not have 
occurred in arbitration. But contrary to the Court’s conclusion that discovery 
would have been limited in arbitration, the broad 
arbitration clause did not preclude any particular type or level of discovery. 
It provided that arbitration would be conducted according to the arbitrator’s 
rules so long as they did not conflict with the FAA. Specifically, and by way of 
example, Defendants did not claim prejudice from or prove that (1) delay because 
of litigation interfered with their business activities, caused them loss of 
evidence, or interfered with their ability to arbitrate; (2) if an arbitrator 
had ordered the lawsuit discovery pursuant to the arbitration clause, the order 
would have violated the arbitration clause; (3) had the litigation discovery 
been requested in arbitration, Defendants would have agreed to it and 
conferences with the arbitrator would not have been necessary; (4) the 
litigation discovery was not useable in arbitration; (5) Defendants had already 
begun trial preparations or taken other litigation related actions that would 
have been wasted effort if the case went to arbitration; or (6) Defendants 
suffered compromise of their legal position on the merits of the Culls’ 
claims.
            
There was not an offer of proof such as by expert testimony, Defendants 
themselves, their attorneys or otherwise, that all, some, or any arbitrators 
probably would not have allowed the discovery, that their agreement or a rule 
limited discovery in arbitration, or Defendants wasted any litigation discovery 
effort. And to boot, arbitrators do not come free. Disclosure conferences in 
arbitration might well have cost more than discovery hearings in litigation 
because arbitrators generally charge for preparing for and attending conferences 
while trial judges do not. Nor have Defendants claimed that their attorneys 
would not have charged fees for arbitration discovery activities. So the 
possibility exists that the disclosure process in arbitration could have ended 
up costing more than litigation discovery.
            
The Court questions whether broad discovery is generally available in 
arbitration, but the parties here do not argue that it is. What is argued 
here is that the parties’ contract provided how the arbitration was to be 
conducted—through adherence to the arbitrator’s rules so long as those rules do 
not conflict with the FAA—and that Defendants did not prove any litigation 
discovery that would have been in violation of the contract. The Court says that 
as of the time of the hearing on the Culls’ motion to compel arbitration, what 
discovery an arbitrator would allow was purely speculative. But arbitration is 
not new; Defendants could have at least attempted to prove the custom and 
practice, if any, of arbitrators as to discovery in arbitration, even though 
each arbitration is governed by the particular 
agreement between the parties. Even if such evidence might have been ruled 
speculative, as the Court concludes it would have been, the obligation to 
overcome the burden of proof still lay with Defendants. See Borg-Warner Corp. 
v. Flores, 232 S.W.3d 765, 772-74 (Tex. 2007) (recognizing difficulties of 
proving asbestos claims against individual defendants, yet requiring plaintiffs 
to meet that burden).
            
The Court says that “a party who enjoys substantial direct benefits by 
gaining an advantage in the pretrial litigation process should be barred from 
turning around and seeking arbitration with the spoils.” ___ 
S.W.3d at ___. I agree with that statement. The problem is that the Court 
does not apply the statement in its entirety to this case. The Court assumes, 
without requiring Defendants to prove, that the Culls obtained some advantage or 
caused detriment to Defendants by both parties having engaged in discovery 
activities. It is hard to see how discovery of facts, witness names, documents, 
and testimony about the controversy can prejudice either party. See Jampole v. Touchy, 673 S.W.2d 569, 573 (Tex. 1984) (noting that 
discovery is done so disputes may be decided by what the facts are, not by what 
facts are concealed). Defendants neither alleged nor proved that they were 
prejudiced because some privileged, proprietary, or confidential matter had been 
disclosed. Discovery in both judicial proceedings and in arbitration facilitates 
just and reasonable resolutions of disputes and helps prevent unjust and 
unreasonable resolutions because of ambush, surprise, or concealment of 
relevant, nonprotected, nonprivileged evidence which could sway the outcome. 
Furthermore, I disagree with the idea that merely making discovery disclosures 
is evidence of wasted effort or other prejudice. Although the extent to which a 
party engages in litigation discovery plays a significant part in determining 
whether that party substantially engaged the litigation process, disclosure of 
relevant, nonprivileged evidence, names of witnesses, 
and information makes just and reasonable dispute resolution more likely 
regardless of whether disclosure is strictly voluntary or is made in judicial 
discovery proceedings or arbitration proceedings.
            
Evidence at the hearing on the Culls’ motion to compel arbitration 
consisted only of testimony by the Culls and five documents they introduced: the 
earnest money contract, the application for warranty, the limited warranty 
agreement containing the arbitration provision, a letter from the warranty 
company, and a copy of one of Defendants’ original answers. The Culls 
acknowledged in their testimony that discovery and depositions had occurred, but 
they were unsure of how many depositions and how much discovery. Defendants 
requested the trial court to take judicial notice of “five separate motions to 
compel discovery and two separate orders on some, but not all, of the motions to 
compel.” The court took notice of “its file,” which at that time mostly 
consisted of copies of pleadings and discovery requests attached as exhibits to 
motions. The file contained only one or two of the documents actually produced 
in discovery. There were two orders on the Culls’ motions to compel discovery. 
The second order referred only to the Kunkel defendants who were not ordered to 
arbitration. Because the Kunkel defendants were not ordered to arbitration, the 
trial court could have determined that any orders or motions relating solely to 
them should not be considered in regard to prejudice as to the other Defendants. 
In short, the record on which the trial court ruled on December 6 was not 
extensive, and although it showed what the Culls requested, practically 
none of the record was of what Defendants produced in discovery, which 
was filed later when Defendants sought to set aside the arbitration award. And 
Defendants did not allege in the trial court that some or even any of the discovery would not be useful in arbitration, only 
that the discovery would not be available in arbitration.
            
Last, the Court says that requiring Defendants to file detailed proof of 
the discovery would have made the record more cumbersome and would have entailed 
more expense, and that to show prejudice, Defendants only had to show 
substantial wasted effort anyway. The Court then concludes that the record 
before the trial court at the time of the hearing showed substantial wasted 
effort, and thus detriment, to Defendants. But in In re Vesta Ins. Group, 
Inc., 192 S.W.3d 759 (Tex. 2006), the Court declined to determine that 
waiver of the right to arbitrate occurred when the party opposing arbitration 
failed to introduce any of the discovery documents, present details about them, 
or contend that the discovery would not be useful in arbitration. The record, 
the Court stated,
 
does not show whether these requests were limited or 
extensive, whether they sought information for affirmative claims or defensive 
ones, or even whether they addressed the merits or merely the arbitration issue. 
Further, [plaintiff] does not allege that the discovery already conducted would 
not be useful in arbitration; to the contrary, he concedes it would be useful 
whether the case is arbitrated or tried.
 
Id. at 
763.
            
Neither party here claimed before arbitration (nor, for that matter, 
after arbitration) that the litigation discovery would not be useful in 
arbitration. On the other hand, and as addressed below, Defendants claimed after 
arbitration that they suffered prejudice because Plaintiffs’ attorney used the 
discovery depositions to prepare for arbitration. In this regard, there are 
further inferences from the record that the Court does not credit but that the 
trial court could have made when it compelled arbitration: both parties would 
use the litigation discovery and depositions to prepare for arbitration, the 
discovery would be useful in arbitration, and neither party was unfairly 
advantaged or suffered detriment from the discovery.
            
In summary, the Court (1) does not limit its review to Defendants’ claims 
of prejudice made in the trial court, (2) disregards factors that presented the 
trial court with decisions to make based on evidence allowing for different 
interpretations and inferences, and (3) assumes “inherent unfairness” equates to 
Defendants’ prejudice or the Culls’ unfair advantage from litigation conduct and 
effectively forgives Defendants’ failure to prove detriment to themselves or 
advantage to the Culls.
            
Defendants make other contentions not reached by the Court, but none of 
them warrant holding that the trial court abused its discretion. In their brief 
to this Court, Defendants reference rules of the American Arbitration 
Association and urge that the AAA Rules of Procedure provide for limited 
discovery in that the arbitrator is limited to directing “(i) the production of documents and other information, and 
(ii) the identification of any witnesses to be called.” Defendants also assert 
that they were prejudiced because during post-arbitration proceedings, the 
Culls’ attorney testified that he reviewed deposition testimony in preparing for 
the arbitration and depositions are not generally available in arbitration.[6] First, Defendants did not introduce the 
AAA rules into evidence at the hearing or ask the trial court to take judicial 
notice of them. Second, to the extent the arguments encompass discovery 
depositions, Defendants did not complain in the trial court that they were 
prejudiced by the taking of depositions or that the Culls planned to use them in 
arbitration, and the argument cannot be raised here. 
See Tex. R. App. P. 33.1; 
Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 577 
(Tex. 2006) (noting that except for fundamental error, appellate courts are not 
authorized to consider issues not properly raised by the parties). Third, even 
if the AAA rules had been before the trial court, there was no evidence that 
all, most, or any arbitrators would have refused to require disclosure of any of 
the matters disclosed by Defendants. Finally, Defendants’ attorneys had access 
to the same deposition testimony to use for arbitration preparation, so there 
could not have been an unfair advantage to the Culls by use of the 
depositions.
            
I conclude the record is not conclusive either that Defendants suffered 
prejudice as they claimed or that the Culls obtained an unfair advantage by 
litigation conduct as the Court holds. I also conclude that evidence before the 
trial court required the court to weigh and draw inferences from it and that 
some evidence supports the trial court’s determination that Defendants did not 
prove prejudice to themselves or unfair advantage to the Culls by use of the 
litigation process. Accordingly, I would hold that the trial court did not abuse 
its discretion by compelling the parties to arbitrate and I would affirm the 
judgment of the court of appeals.
 
 
 
            
            
            
            
            
            
________________________________________
            
            
            
            
            
            
Phil Johnson
            
            
            
            
            
            
Justice
 
 
OPINION DELIVERED: May 2, 
2008






[1] 
In relevant part, the provision provided for the homeowners, the builder, the administrator of the warranty program, and the warranty 
insurer to submit to arbitration
all claims, demands, disputes, controversies, and 
differences that may arise between the parties to this Agreement of whatever 
kind or nature, including without limitation, disputes: (1) as to events, 
representations, or omissions which pre-date this Agreement; (2) arising out of 
this Agreement or other action performed or to be performed by the Builder, the 
Administrator or the Insurer pursuant to this Agreement.
                
    As to procedures in arbitration, the arbitration 
provision provided that “The Arbitration shall be conducted in accordance with 
the Arbitrator’s rules and regulations to the extent that they are not in 
conflict with the Federal Arbitration Act.”

[2] 
The trial court did not order arbitration as to defendants Jerald W. Kunkel, the 
foundation engineer, and his firm. The Culls agreed the Kunkel defendants were 
not covered by the arbitration agreement. The Kunkel defendants are not parties 
to this appeal.

[3] 
Defendants referenced depositions in their motion for rehearing. They did not 
take the position or offer proof at the hearing on the Culls’ motion to compel 
arbitration that depositions would not have occurred in arbitration either by 
permission of the arbitrator or by agreement.

[4] 
Although not before the trial court when it ordered arbitration, the arbitration 
record now before us shows that Defendants considered the clause to provide for 
recovery of all litigation costs and attorneys’ fees, not just those 
incurred in seeking dismissal of the lawsuit. The arbitration record shows 
Defendants claimed that pursuant to the reimbursement clause they were “entitled 
to recover or setoff [their] attorney’s fees from [the Culls], which were 
incurred in connection, with the litigation.” Perry Homes’ attorney submitted an affidavit to 
the arbitrator in support of the claim for attorneys’ fees recovery or setoff. 
The affidavit mirrored the affidavit submitted as part of Defendants’ motion for 
reconsideration that was earlier filed in the lawsuit. The arbitration affidavit 
claimed that
Prior to the Court’s order compelling arbitration, Perry 
Homes incurred one-hundred-twenty-two (122) attorney hours and twenty (20) 
paralegal hours responding to Claimants’ discovery requests and 
discovery-related motions. Accordingly, Perry Homes is entitled to an offset in the 
amount of $26,400.00 against any damages awarded to Claimants, due to their 
violation of the arbitration agreement.

[5] 
The Federal Arbitration Act provides that an arbitration award may be set aside 
for limited reasons:
 
(1) where the award was 
procured by corruption, fraud, or undue means;
(2) where there was evident 
partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in 
refusing to postpone the hearing, upon sufficient cause shown, or in refusing to 
hear evidence pertinent and material to the controversy; or of any other 
misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators 
exceeded their powers, or so imperfectly executed them that a mutual, final, and 
definite award upon the subject matter submitted was not made.
 
9 U.S.C. § 
10(a).

[6] 
Of course, that argument cuts against the idea that discovery was not usable in 
arbitration.